# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA E. CONTRERAS,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>    Defendant. | No. CV 08-3489 AGR<br><br>MEMORANDUM OPINION AND ORDER |

    Maria E. Contreras filed this action on May 30, 2008. Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on June 13 and August 4, 2008. (Dkt. Nos. 8,9.) The parties filed a Joint Stipulation ("J.S.") on February 7, 2009, that addressed the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

    Having reviewed the entire file, the Court concludes that this matter is remanded for further proceedings consistent with this opinion.

///
///
///
///

# I.
## PROCEDURAL BACKGROUND

On January 5, 2006, Contreras filed an application for disability insurance benefits, alleging a disability onset date of December 10, 1998.  A.R. 18.  The application was denied initially and upon reconsideration.  A.R. 42-43.  An Administrative Law Judge ("ALJ") conducted a hearing on January 31, 2007, at which Contreras and a vocational expert ("VE") testified.  A.R. 370-92.  On April 19, 2007,[1] the AL issued an unfavorable decision.  A.R. 15-28.  On April 24, 2008, the Appeals Counsel denied Contreras' request for review.  A.R. 5-8.  This lawsuit followed.

# II.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  *Moncada*, 60 F.3d at 523.

---

[1] The stamped date of April 19, 2006 is an error.  A.R. 15.

# III.

# EVALUATION OF DISABILITY

## A. Disability

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Contreras was last insured through December 30, 2004, and had to prove her disability existed on or before that date to be entitled to disability insurance benefits.[2] A.R. 18, 20.

Following the five step sequential evaluation process for determining disability, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006), the ALJ found that Contreras "had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; status post right carpal tunnel release, mild left carpal tunnel syndrome, and mild impingement syndrome of the left shoulder." A.R. 20.[3] Contreras had the residual functional capacity ("RFC") to "lift/carry 20 pounds occasionally, 10 pounds frequently, and stand, walk or sit for 6 out of 8 hours a day with no climbing of ladders, ropes or scaffolds. She was able to occasionally climb ramps and stairs, and

---

[2] "[T]o obtain disability benefits, [a claimant] must demonstrate he was disabled prior to his last insured date." *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991). The claimant "bears the burden of proof and must prove that he was 'either permanently disabled or subject to a condition which became so severe as to disable [him] prior to the date upon which [his] disability insured status expired.'" *Armstrong v. Comm'r of the Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) (citation omitted).

[3] At the hearing, Contreras alleged a mental impairment from post-traumatic stress disorder. A.R. 373. The ALJ found no severe mental impairment at step two. A.R. 20-21, 25-26. Contreras does not contest this finding.

occasionally stoop, kneel, crouch, balance and crawl.  She was able to occasionally handle and finger bilaterally.  She was precluded from reaching above shoulder level bilaterally.  She was to avoid moderate exposure to vibration and to hazards including unprotected heights and dangerous machinery." A.R. 21.  Although Contreras was unable to perform her past relevant work, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." A.R. 27.

### C. Treating Physician's Opinion

Contreras contends that the ALJ failed to properly consider the opinions of her treating physician, Dr. Nagelberg.  J.S. at 9-11.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and internal quotations omitted).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and internal quotation marks omitted).

The ALJ referred to a Residual Functional Capacity Questionnaire prepared by Dr. Nagelberg.  A.R. 25; A.R. 293-99.  Dr. Nagelberg opined that Contreras could sit at least 6 hours in an 8-hour workday, stand/walk at least 6 hours in an 8-hour workday, and did not need to shift positions at will.  A.R. 296-97.  Dr. Nagelberg further opined that Contreras would, infrequently, need to take an unscheduled 5-minute break during an 8-hour workday.  A.R. 297.  Dr. Nagelberg stated that Contreras could occasionally lift and carry up to 20 pounds, with "occasionally" defined on the form as "less than 1/3 of the working day." A.R. 298.  However, Contreras could not lift any weight "frequently," defined on the form as "between 1/3 to 2/3 of the working day." A.R. 298.

Contreras was limited in reaching to 15% of the time with her left arm, and was limited in various uses of her right hand and right fingers to 20-25% of the time. *Id.* Dr. Nagelberg stated that Contreras could bend and twist at the waist less than 10% of the time. *Id.* Dr. Nagelberg estimated that Contreras likely would be absent about twice a month due to occasional bad days. A.R. 299.

The Commissioner argues that Dr. Nagelberg's RFC Questionnaire is not relevant because it is dated January 4, 2007 and expressly states that the earliest date that the description of symptoms *and limitations* in the questionnaire applies is "6/21/05 – this is the date of the AME (Mason Hohl M.D.) report of permanent and stationary status." J.S. 14 (emphasis in original); A.R. 299. The Commissioner points out that June 21, 2005 is approximately six months after the date last insured, December 30, 2004. J.S. 14.

The ALJ, however, did not reject Dr. Nagelberg's RFC Questionnaire on the basis that it related to a period after the date last insured.[4] A.R. 25. This court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). A court "may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630.

Contreras argues that Dr. Nagelberg's opinion was entitled to controlling weight. J.S. 9-10. "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ discounted Dr. Nagelberg's opinion based on "minimal clinical findings on examination in relation to her lumbar spine, at the time of her date last

---

[4] The ALJ noted that the consultative examinations performed after the date last insured were not relevant. A.R. 25. However, the ALJ did not specifically address whether Dr. Nagelberg's opinion in 2007 was relevant.

insured." A.R. 25.  In other respects, although the ALJ found that Dr. Nagelberg's opinion was "not inconsistent with the conclusion reached in this decision," *id.*, the ALJ made no finding as to whether Dr. Nagelberg's opinion was not inconsistent with the other substantial evidence in the record.

Contreras has not shown that the ALJ's statement regarding "minimal clinical findings on examination in relation to her lumbar spine, at the time of her date last insured" (December 30, 2004) is not supported by substantial evidence.  A.R. 25.  Dr. Nagelberg diagnosed Grade I spondylolisthesis at L4-5, which is the lowest grade.  A.R. 142.  As the ALJ noted, Dr. Nagelberg found that Contreras could flex to 60 degrees and extend 10 degrees, had no neurologic abnormalities, and straight leg raising was negative.  A.R. 25, 198.  Dr. Hohl reported that, as of June 21, 2005, Contreras did not complain of her lower back.  A.R. 97.  Dr. Hohl noted the objective findings of "a mild range of lumbar movement in all directions, normal neurologic findings and x-rays in the submitted records that indicated degenerative spondylolisthesis at L4-5, which the MRI study has substantiated."  A.R. 97-98.  With respect to the lumbar spine, Dr. Hohl precluded Contreras from "heavy lifting and repeated bending and stooping."  A.R. 98.

The ALJ stated that in other respects, "the opinion of Dr. Nagelberg is not inconsistent with the conclusion reached in this decision."  A.R. 25.  Contreras points out differences between Dr. Nagelberg's opinion and the ALJ's RFC.  J.S. 10.  Whereas Dr. Nagelberg opined that Contreras could not lift any weight frequently,[5] the ALJ found that Contreras could lift 10 pounds frequently.  *Compare* A.R. 298 *with* A.R. 21.  Whereas Dr. Nagelberg estimated that Contreras would likely be absent about twice a month as a result of impairments or treatments, the ALJ's RFC did not include that limitation.  *Compare* A.R. 299 *with* A.R. 21.

---

[5] To the extent Contreras asks this Court to find that Dr. Nagelberg defined "occasionally" to mean up to 25% of the workday (J.S. 10), Contreras' request is rejected.  The form defines occasionally right under the space filled out by Dr. Nagelberg.  A.R. 298.

This matter must be remanded because it is not clear from the ALJ's decision whether he intended to accept or reject Dr. Nagelberg's opinions. On remand, the ALJ should reassess Dr. Nagelberg's opinions.

### D. Contreras' Credibility

Contreras next contends that the ALJ did not properly consider her testimony. J.S. 16 (citing A.R. 378-81).

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (citations omitted). Here, the ALJ found that Contreras' "medically determinable impairments could have been reasonably expected to produce the alleged symptoms." A.R. 23.

"Second, if the claimant meets this first test, and there is no evidence of malingering,[6] 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). In determining credibility, an ALJ may consider: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (*e.g.*, movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side-effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily

---

[6] The ALJ noted that a psychological examination on February 28, 2007, produced "compelling evidence that the claimant was malingering." A.R. 25.

activities; and "ordinary techniques of credibility evaluation." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (*en banc*) (citing Social Security Ruling 88-13,[7] internal quotation marks omitted); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ may also consider inconsistencies or discrepancies in claimant's statements; inconsistencies between claimant's statements and activities; exaggerated complaints; and unexplained failure to seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959; *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found that Contreras' "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." A.R. 23. The ALJ's reasons fall into four categories: (1) inconsistencies in her statements concerning disability; (2) sub-optimal effort during a consultative examination; (3) gaps in treatment; and (4) absence of objective medical evidence to support her degree of limitation. A.R. 21-26.

***Inconsistent Statements***

An ALJ may properly rely upon a claimant's inconsistent statements to discount credibility. *See Thomas*, 278 F.3d at 958-59.

Contreras testified that she does not go out by herself, except to get her mail from her door, because she is afraid after being assaulted in 1998. A.R. 23, 379. On the other hand, the ALJ noted that Contreras told Dr. Hohl in June 2005 that she is able to leave the house and "no longer feels tense and frightened." A.R. 23, 92. She is able to go to the market and family functions, run short errands, and drive locally. A.R. 92-93.

---

[7] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

8

She undertook vocational rehabilitation in data entry, but could not find work in that field. A.R. 92. The ALJ also noted that Contreras went to a consultative psychiatric examination unaccompanied in February 2007. A.R. 23, 335.

When asked about chores around the house, Contreras responded that she makes her own food and that is about it. Her son does the vacuuming and groceries. A.R. 22, 376. By contrast, the ALJ noted that Contreras reported to Dr. Hohl in June 2005 that, although she is not capable of heavy lifting, she exercises, runs short errands, drives locally, watches TV, cares for plants, cooks, vacuums and dusts. A.R. 24, 93.

Contreras testified that she saw Dr. Friedman once a week for six months, and stopped in 2004. A.R. 23, 377-78. However, the ALJ found that "the record clearly shows that she saw Dr. Friedman only once or twice, the last time in March 2001." A.R. 23, 219-34 (March 2001), 237-39 (August 1999), 240-46 (February 1999). Contreras argues that the ALJ cannot infer that her testimony was inaccurate just because the medical records do not establish contact in the intervening periods. J.S. at 24.

Contreras testified that she does not get mental health treatment because she feels safer staying at home. A.R. 23, 379. This is what she told Dr. Friedman in March 2001. A.R. 221, 231. On the other hand, the ALJ noted that Contreras told Drs. Glaser and Chidekel in August 2001 that she did not return to treatment because she did not feel she needed it. A.R. 25, 277. Contreras also told Dr. Hohl in June 2005 that she stopped seeing her psychiatrist because her stress was "much diminished." A.R. 24, 92. Moreover, the ALJ further noted that Contreras did see other physicians during the same period, 1999-2001. A.R. 25, 114, 118-31, 249-68.

### *Sub-Optimal Effort at a Consultative Examination*

An ALJ may properly rely on failure to give maximum or consistent effort during evaluation in discounting a claimant's credibility. *See Thomas*, 278 F.3d at 959. As the ALJ noted, the examining psychologist stated that Contreras "presented with what appeared to be a sub-optimal effort throughout this evaluation." A.R. 336, 339.

Contreras scored a 30 on the Test of Memory Malingering, significantly below the cutoff of 45 and "suggestive of malingering." A.R. 340. Whereas Contreras scored a verbal IQ of 65, she indicated at least average language facility, including intact verbal comprehension, ability to carry on a normal conversation, and ability to supply a detailed and coherent history in the interview. The psychologist concluded that Contreras had significantly higher intellectual functioning that the IQ estimates obtained in testing. A.R. 341. Given the test results and clinical data, the psychologist was unable to make a diagnosis. A.R. 342.

### *Gaps in Treatment*

Unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment are valid considerations in determining credibility. *See Orn*, 495 F.3d at 636; *Thomas*, 278 F.3d at 958-59.

The ALJ pointed out "relative[ly] infrequent trips to the doctors who [Contreras] was seeing primarily in regard to her Workers' Compensation claim." A.R. 26. With respect to Dr. Nagelberg, there was a gap from June 6, 2002 until December 30, 2004. A.R. 195-96. As to Dr. Hohl, there was a gap from January 19, 2001 to June 21, 2005. A.R. 102-03; A.R. 92-98. These gaps, which are not explained, may be considered inconsistent with debilitating pain and are significant given a last insured date of December 30, 2004.

### *Objective Medical Evidence*

Contreras correctly observes that, although the lack of objective medical evidence is a factor that an ALJ can consider, it "cannot form the sole basis for discounting pain testimony." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ noted that no treating, examining or nonexamining physician opined that Contreras is disabled within the meaning of Social Security Act. A.R. 26. The ALJ also noted minimal objective orthopedic findings. *Id.*

The ALJ's credibility finding is supported by substantial evidence. In addition, even assuming that Contreras could show that the ALJ erred in relying on a particular

reason for discounting credibility, which she has not done, error in relying on one reason would not automatically result in remand. In *Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. The court held that when an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination*." *Id.* at 1162 (italics in original). Therefore, when, as here, an ALJ articulates specific reasons for discounting a claimant's credibility, reliance on an illegitimate reason(s) among others does not automatically result in a remand. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied, there was substantial evidence supporting the ALJ's decision"). Based on the ALJ's reasoning, his credibility determination as to Contreras is valid.

## IV.
## CONCLUSION

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for reassessment of Dr. Nagelberg's opinions as set forth in this Memorandum Opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 27, 2009

ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE